UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SRC LABS, LLC, et al.,<br><br>                    Plaintiffs,<br>    v.<br><br>MICROSOFT CORPORATION,<br><br>                    Defendant. | CASE NO. C18-0321JLR<br><br>ORDER STAYING CASE PENDING *INTER PARTES* REVIEW PROCEEDINGS |

## I.    INTRODUCTION

Before the court is Defendant Microsoft Corporation's ("Microsoft") motion to stay the above-captioned case pending *inter partes* review ("IPR"). (Mot. (Dkt. # 117).) Microsoft contends that their 10 pending petitions for IPR, which they filed with the Patent and Trademark Office ("PTO") between August 24, 2018, and September 11, 2018, warrant such a stay. (*See generally id.*) Plaintiffs SRC Labs, LLC ("SRC") and Saint Regis Mohawk Tribe ("SRMT") (collectively, "Plaintiffs") oppose the motion. (Resp. (Dkt. # 123).) Microsoft filed a reply. (Reply (Dkt. # 129).) The court has

considered the parties' submissions in support of and in opposition to the motion, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS Microsoft's motion, STAYS the case pending the PTO's decisions on Microsoft's 10 IPR petitions, VACATES all case deadlines that remain as of the date of this order, and ORDERS the parties to file a joint status report regarding the status of Microsoft's 10 IPR petitions upon receiving decisions on all 10 petitions from the PTO or on May 1, 2019, whichever occurs first.

## II. BACKGROUND

Plaintiffs assert that Microsoft infringes upon United States Patent Nos. 6,076,152 ("the '152 patent"), 6,247,110 ("the '110 patent"), 6,434,687 ("the '687 patent"), 7,225,324 ("the '324 patent"), 7,421,524 ("the '524 patent"), and 7,620,800 ("the '800 patent"). (*See generally* Am. Compl. (Dkt. # 103); *see also* '152 patent (Dkt. # 103-1); '110 patent (Dkt. # 103-2); '687 patent (Dkt. # 103-3); '324 patent (Dkt. # 103-4); '524 patent (Dkt. # 103-5); '800 patent (Dkt. # 103-6).) Plaintiffs filed this case on October 18, 2017, in the Eastern District of Virginia. (*See* Compl. (Dkt. # 1).) The Virginia district court transferred the case to this court on February 26, 2018. (*See* 2/26/18 Order (Dkt. # 50); *see also* 3/1/18 Letter (Dkt. # 52).)

In a separate action in this court, Plaintiffs asserted patent infringement claims against Amazon Web Services, Inc., Amazon.com, Inc., and VADATA, Inc. *See SRC*

---

[1] Plaintiffs request oral argument (*see* Resp. at 1), but the court concludes that oral argument would not be helpful to its disposition of this motion and denies Plaintiffs' request. *See* Local Rules W.D. Wash. LCR 7(b)(4).

*Labs, LLC v. Amazon Web Services, Inc.*, No. C18-0317JLR (W.D. Wash), Dkt. # 1. Three of the six patents-at-issue in the present case—the '110 patent, the '687 patent, and the '800 patent—are also at issue in *SRC Labs, LLC v. Amazon Web Services, Inc. See id.*, Dkt. # 1 ¶ 1. Due to the overlapping patents, the parties in the two cases submitted coordinated discovery plans (*see, e.g.*, Discovery Plan (Dkt. # 91)), which the court modified and approved on May 22, 2018 (*see* Sched. Order (Dkt. # 94)). The court also consolidated the *Markman* hearing[2] and the *Markman*-related pretrial matters for the two cases, with the *Markman* hearing scheduled for December 20-21, 2018. (*See* 5/22/18 Min. Order (Dkt. # 95) at 1-2; Sched. Order at 2.) In this case, certain deadlines had expired by the time Microsoft filed the present motion: disclosing preliminary infringement contentions and asserted claims, joining additional parties, disclosing preliminary invalidity contentions, providing expert witness reports on *Markman* issues, providing rebuttal expert reports on *Markman* issues, and exchanging preliminary claim charts. (Sched. Order at 1-2; *see also* 8/31/18 Order (Dkt. # 112); Dkt.)

Between August 24, 2018, and September 11, 2018, Microsoft filed 10 petitions for IPR with the PTO's Patent Trial and Appeal Board ("PTAB"). (Mot. at 6.) In these 10 petitions, Microsoft challenges all six of the patents-at-issue in this case, alleging 38 separate grounds of invalidity based on 20 different prior art patents and publications. (*Id.*) The PTAB has issued notices establishing patent owner response deadlines for 4 of the 10 IPR petitions, covering the '687, '524, '324, and '800 patents. (Love Decl. (Dkt.

---

[2] *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996).

# 118), ¶¶ 10-13, Exs. H-K.)  Microsoft claims that, in the ordinary course, it expects similar notices and response deadlines for the other six petitions to be issued soon.  (Mot. at 6.)  At the latest, the PTAB will determine whether to grant Microsoft's first four petitions by March 2019.  (*See id.*); *see also* 35 U.S.C. § 314(b) (requiring the PTAB to "determine whether to institute" an IPR "within 3 months after . . . receiving a preliminary response to the petition").  The PTAB should determine whether to grant Microsoft's remaining six petitions by April 2019.  *See* 35 U.S.C. § 314(b).  When the PTAB grants a petition, it has one year to complete the review, but may extend the one-year period by up to six months for good cause.  35 U.S.C. § 316(a)(11); 37 C.F.R. § 42.100(c).  Thus, if the PTAB grants all of Microsoft's petitions and conducts an IPR trial on all of the patents, the IPR trials and decisions should conclude by March or April 2020, but may be extended to October 2020.  *Id.*; (*see also* Mot. at 6.)

On October 11, 2018, after confirming that Plaintiffs would not stipulate to a stay pending resolution of Microsoft's IPR petitions (*see* Love Decl. ¶ 14, Ex. L), Microsoft moved to stay this case (*see* Mot.).  That motion is now before the court.

### III. ANALYSIS

The court has the authority to stay this case pending the outcome of an IPR petition.  *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988); *Wre-Hol v. Pharos Sci. & Applications*, No. C09-1642MJP, 2010 WL 2985685, at *2 (W.D. Wash. July 23, 2010); *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 14-cv-05330-HSG, 2015 WL 1967878, at *2 (N.D. Cal. May 1, 2015).  To determine whether to grant such a stay, the court considers "(1) whether a stay will simplify the issues in question and the trial of the

case[s], (2) whether discovery is complete and whether . . . trial date[s] ha[ve] already been set, and (3) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Pac. Bioscience Labs., Inc. v. Pretika Corp.*, 760 F. Supp. 2d 1061, 1063 (W.D. Wash. 2011). The court applies this "three-factor framework from *Pacific Biosciences* regardless of whether an IPR petition is pending or has been granted." *See Nat'l Prods., Inc. v. Akron Res., Inc.*, No. 15-1984JLR (W.D. Wash.), Dkt. # 66 at 6 (citations omitted). "The moving party bears the burden of demonstrating that a stay is appropriate." *DSS Tech.*, 2015 WL 1967878, at *2.

**A.     Simplification of the Case**

The court first considers whether and to what extent staying these cases pending the outcome of the IPR petitions would simplify the issues and the trial in this case. *See Pac. Bioscience*, 760 F. Supp. 2d at 1063. Microsoft argues that, in light of the multiple IPR petitions, there is a significant chance that a stay pending the IPRs would simplify the issues. (Mot. at 8-10.) Microsoft relies heavily on PTO statistics to support its claim. (*See id.*) Plaintiffs argue that Microsoft's motion is premature because the PTAB has not yet assigned each IPR petition to a panel, and has not yet instituted any of the IPRs. (Resp. at 7-9.) In addition, Plaintiffs assert that, even assuming the PTAB grants the IPR petitions, Microsoft's invalidity claims in this case are different than its invalidity claims in the IPRs. (Resp. at 12-13.) Therefore, according to Plaintiffs, any decision the PTAB reaches will not simplify the issues here. (*Id.*) Lastly, Plaintiffs claim that this court is a more expeditious and efficient forum to try the patents-at-issue because trial is currently

//

scheduled for November 4, 2019, while the PTAB will not reach a decision until March 2020 at the earliest. (*Id.* at 13; *see also* Sched. Order at 1.)

The court agrees that it is less likely that a "pre-institution" IPR—meaning, the PTAB has not yet decided whether to grant the IPR—will simplify litigation because the IPR may never occur. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1316 (Fed. Cir. 2014) ("While a motion to stay could be granted even before the PTAB rules on a post-grant review petition, no doubt the case for a stay is stronger after post-grant review has been instituted."). But, contrary to Plaintiffs' assertion (*see* Resp. at 7-9), a motion to stay pending an IPR is not "premature" simply because the PTAB has not yet instituted the IPR. *Id.*; *Nat'l Prods.*, No. 15-1984JLR, Dkt. # 66 at 6; *see also Pragmatus AV, LLC v. Facebook, Inc.*, No. 11-CV-02168-EJD, 2011 WL 4802958, at *3 (N.D. Cal. Oct. 11, 2011) (collecting cases that demonstrate "it is not uncommon for [the Northern District of California] to grant stays pending reexamination prior to the PTO deciding to reexamine the patent").

This court has relied on PTO statistics to help determine if a pre-institution IPR will simplify litigation. *See Nat'l Prods.*, No. 15-1984JLR, Dkt. # 66 at 7; *see also Pac. Biosciences*, 760 F. Supp. 2d at 1063-64. Of the 6,937 IPR petitions decided by the PTAB as of August 31, 2018, the PTAB instituted trial on 4,650 (67%) petitions and denied trial on 2,287 (33%) petitions. (*See* Love Decl. ¶ 4, Ex. B ("PTAB Statistics) at 11.)[3] The PTAB's institution rate for patents in the "Electrical/Computer" field, which

---

[3] For this exhibit, the court cites to the page numbers at the bottom-right of the pages.

all the patents-at-issue fall within, is almost identical at 67.66%. (*Id.* at 8.) The court therefore concludes that, for each of Microsoft's IPR petitions, there is approximately a 33% chance that the PTAB denies the petition and approximately a 67% chance that the PTAB grants the petition.

Moreover, of the 2,308 petitions that had reached a final written decision by August 31, 2018, the PTAB determined that all instituted claims were unpatentable in 1,488 cases (64%), that some claims were unpatentable in 379 cases (16%), and that no claims were unpatentable in 441 cases (19%). (*Id.* at 11.) The parties have provided no persuasive reason to believe that Microsoft's IPR petitions, if granted, are more or less likely to succeed than the average petition submitted to the PTAB. And although Plaintiffs are correct that the invalidity grounds that Microsoft has asserted in this case are not addressed in the IPR petitions (*see* Resp. at 12-13; *see also* Reply at 6), if the PTAB invalidates the claims, Microsoft's invalidity defenses in this case would be moot. Accordingly, the court concludes that, if instituted, each IPR trial would have approximately a 64% chance of substantially simplifying this case, a 16% chance of insubstantially simplifying the case by concluding that some but not all claims are unpatentable, and a 19% chance of not affecting the case.

Based on these calculations, the court roughly approximates that, for each separate IPR petition that Microsoft filed, there is a 43%[4] chance that the petition substantially

//

//

---

[4] $0.67 \times 0.64 = 0.4288$.

simplifies the case, an 11%[5] chance that the petition insubstantially simplifies the case, and a 46%[6] chance that the petition does not affect the case.

However, these statistics change significantly when factoring in the number of IPR petitions at issue. The chance that 0 of the 10 petitions substantially simplifies this case could be as low as 0.4%.[7] This calculation may be inaccurate because, as Microsoft admits, the PTAB may not consider the 10 IPR petitions independently. (*See* Mot. at 9 n.3) In other words, because the 10 petitions involve 6 patents, which concern closely related subject matter, it is more likely that the PTAB rules similarly on all 10 petitions. Regardless, the essential point is that because there are 10 IPR petitions pending, it is far more likely than 43% that at least 1 of the IPR petitions substantially simplifies this case, and far less likely than 46% that none of the IPR petitions substantially simplifies this case.

Based on the foregoing calculations and analysis, the court finds that there are significant odds that the IPR petitions will substantially simplify this case.[8] Accordingly the court concludes that this factor weighs in favor of granting the stay.

//

//

---

[5] $0.67 \times 0.16 = 0.1072$.

[6] $(0.67 \times 0.19) + 0.37 = 0.4573$.

[7] $(1 - 0.43)^{10} = .0036$.

[8] Neither party asks the court to consider this factor in light of the consolidated *Markman* hearing and overlapping patents-at-issue with *SRC Labs, LLC v. Amazon Web Services, Inc.*, No. C18-0317JLR (W.D. Wash). (*See generally* Mot.; Resp.; Reply.) The court therefore declines to do so.

**B.     Stage of the Litigation**

The second factor that the court considers is the stage of the litigation. *Pac. Bioscience*, 760 F. Supp. 2d at 1063. "[T]he proper time to measure the stage of the litigation" is at "the date of the filing of the motion to stay." *VirtualAgility*, 759 F.3d at 1316. Here, when Microsoft filed its motion on October 11, 2018, document production and written discovery had taken place, but only one fact witness deposition had been scheduled. (Mot. at 10.) In addition, the parties had not yet filed their joint claim chart and prehearing statement, or their opening claim construction briefs. (*See generally* Dkt.) The December 20-21, 2018, *Markman* hearing was over two months away, the May 24, 2019, discovery cutoff date was over seven months away, and the November 4, 2019, trial was over a year away. (*See* Sched. Order at 1-2.)

This court has stayed patent cases at similar stages. *See, e.g.*, *Pac. Bioscience*, 760 F. Supp. 2d at 1066; *Nat'l Prods.*, No. 15-1984JLR, Dkt. # 66 at 9-11. For example, in *Pacific Bioscience*, the court considered a motion to stay at a time when the parties had performed "limited written discovery and document production," but discovery was "far from complete." 760 F. Supp. 2d at 1066. In addition, the *Markman* hearing had not yet taken place, nor had the parties submitted claim construction briefs. *Id.* Trial was also a year away. *Id.* at 1063. On these facts, the court found that "[n]either the parties, nor the court, have invested the kind of resources that would render a stay pending reexamination untenable. To the contrary, the fact that substantial additional discovery, claim construction, and other issues lie ahead in this case weighs in favor of a stay." *Id.* at 1066.

Plaintiffs argue that this case not at its earliest stages, that the parties have exchanged extensive written discovery, and that many depositions have been taken. (Resp. at 13-14.) But most of these depositions occurred after Microsoft filed its motion. (Reply at 7.) And even though written discovery has been exchanged, many months of discovery remain. (*See* Sched. Order at 2.) Thus, measured at the time that Microsoft filed the present motion, the court does not see any meaningful difference between the litigation stage in *Pacific Bioscience* and the litigation stage here.[9] The court therefore finds that this factor weighs in favor of a stay.

C. **Prejudice to the Non-Moving Party**

The final factor in the court's analysis is undue prejudice to Plaintiffs. *See Pac. Bioscience*, 760 F. Supp. 2d at 1063. Courts, including this one, "have found that mere delay does not demonstrate undue prejudice." *Implicit Networks, Inc. v. Advanced Micro Devices, Inc.*, No. C08-0184JLR, 2009 WL 357902, at *3 (W.D. Wash. Feb. 9, 2009).

"Courts are hesitant to grant a stay if the parties are direct competitors." *Palomar Techs., Inc. v. Mrsi Sys., LLC*, No. 15-CV-1484 JLS (KSC), 2016 WL 4496839, at *5 (S.D. Cal. June 14, 2016). Plaintiffs do not allege that SRC or SRMT compete with Microsoft. (*See* Resp. at 14-15.) Rather, Plaintiffs argue that a stay would unduly prejudice them because SRC's sister company, DirectStream, directly competes with Microsoft. (*Id.* at 14.) But Plaintiffs do not provide any law that says the court can

---

[9] Plaintiffs also argue that granting Microsoft's motion would "reward Microsoft for filing its IPR petitions belatedly, almost a year after this case was first filed." (Resp. at 14.) To the contrary, Microsoft's petitions are timely in that Microsoft sought IPR within one year of being served with a suit for patent infringement. *See* 35 U.S.C. § 315(b).

consider prejudice to a sister company. (*See generally id.*)  To the contrary, when a corporation divides into two distinct entities, courts consider these entities as separate for purposes of litigation. *See, e.g.*, *Ply-Am, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004) (explaining that when a corporation divides, the entity that holds the patent and alleges infringement cannot claim damages caused to the non-patent holding entity).  Therefore, the court does not find that Plaintiffs would suffer any undue prejudice resulting from direct competition with Microsoft.

Plaintiffs also argue that a lengthy delay in litigation could cause a loss of critical evidence and accurate testimony. (*Id.* at 15.)  And any delay here will be longer than usual, according to Plaintiffs, because of the ongoing case, *Saint Regis Mohawk Tribe v. Mylan Pharmaceuticals Inc.*, 896 F.3d 1322 (Fed. Cir. 2018), which concerns whether patents owned by a Tribe are shielded by the Tribe's sovereign immunity (*see* Mot. at 12; Resp. at 15).  In that case, the Federal Circuit determined that "tribal immunity does not extend to" IPR decisions. *Mylan Pharms.*, 896 F.3d at 1329.  Plaintiffs were denied *en banc* review, but may seek review from the Supreme Court. (Resp. at 15; Reply at 9 n.5.)

Again, "mere delay does not demonstrate undue prejudice." *Implicit Networks*, 2009 WL 357902, at *3.  Moreover, the delay in *Saint Regis Mohawk Tribe v. Mylan Pharmaceuticals Inc.* is the result of SRMT's appeals. *See Mylan Pharms.*, 896 F.3d at 1329 (affirming the PTAB's decision that tribal immunity does not apply to IPR).  That said, it is not feasible for this court to consider the potentialities of other matters, especially without an adequate record before it.  More importantly, Plaintiffs do not point to any evidence or testimony that could be lost due to a stay—even an extended one.

(*See* Resp. at 14-15.) In sum, the delay caused by Microsoft's IPR petitions does not demonstrate undue prejudice resulting from a loss of evidence or testimony.

Lastly, Plaintiffs argue that a stay will endorse Microsoft's "efficient infringement" business strategy, whereby Microsoft is actively "free-riding on the inventions of others without compensating the inventors." (Resp. at 15; Griffin Decl. (Dkt. # 124) ¶ 4, Ex. C at 2.) Plaintiffs point to Microsoft's history as a top-five filer of IPRs, and the large settlements that Microsoft has had to pay as a result of past patent infringement. (Resp. at 15; Griffin Decl. ¶¶ 5-6.) Plaintiffs seem to imply that the court should deny the stay because Microsoft filed the IPR petitions at issue with nefarious intent. To the extent that is Plaintiffs' argument, they have not supported it, and the court does not agree. Further, if a delay increases Plaintiffs' damages, this can be remedied by increased monetary relief if Microsoft is ultimately found liable.

Regardless, trial in this case is currently scheduled for November 4, 2019. (*See* Sched. Order at 1.) The IPR trials—to the extent any occur—should be completed by March or April 2020. This five-month delay is not significant, especially where the parties are not direct competitors. *Cf. Nat'l Prods.*, No. 15-1984JLR, Dkt. # 66 at 12 (noting that a four-and-a-half month delay caused by a stay pending IPR was minor compared to the four-and-a-half years during which the parties shared the marketplace as direct competitors). Thus, due to the lack of direct competition between the parties and the short duration of the delay, the court concludes that this factor weighs slightly in favor of granting a stay.

//

### D. Balancing the Factors

In sum, two of the three factors weigh in favor of a stay, and one weighs slightly in favor of a stay. The high likelihood of substantial simplification of this case, the early stage of this litigation, and the lack of undue prejudice lead the court to conclude that a stay pending resolution of the 10 IPR petitions is appropriate.

### E. Judicial Estoppel

Separate from the normal factors that the court weighs when considering a stay, Plaintiffs argue that Microsoft should be judicially estopped from moving for a stay. (Resp. at 9-10.) Plaintiffs' argument is based on the fact that Microsoft sought and achieved a transfer of this case from the Eastern District of Virginia by claiming that the Western District of Washington is the appropriate venue for this case. (*Id.*) Plaintiffs say that Microsoft should not now be able to achieve a stay after filing 10 IPR petitions with the PTAB, which is based in Alexandria, Virginia. (*Id.* at 9.) Allowing the stay, Plaintiffs claim, would "create the perception that either [the Eastern District of Virginia] or this Court was misled." (*Id.* at 10.) Plaintiffs further claim that Microsoft's inconsistent positions evidence gamesmanship, which has unfairly delayed this case from the June 2019 trial date in the Eastern District of Virginia, to the November 2019 trial date in this court, to the potential March or April 2020 trial date in the PTAB. (*Id.*)

In response, Microsoft says that it has not taken inconsistent positions. (Reply at 4-5.) Microsoft claims that it appropriately sought to transfer this case because the alleged infringing activity occurred in the Western District of Washington, and Microsoft's witnesses reside here. (*Id.* at 4.) The Eastern District of Virginia agreed with

1 | this position. (*See* 2/26/18 Order at 1-4.)  Microsoft also distinguishes Plaintiffs'

2 | infringement claims that are at issue in this case, from Microsoft's validity claims that are

3 | at issue in the IPRs.  Microsoft argues that adjudicating these claims will involve separate

4 | evidence. (Reply at 4-5.)  Lastly, Microsoft says that it filed its IPR petitions

5 | electronically with the PTO, which is the only way such petitions can be filed. (*Id.* at 5.)

6 | Although the PTO is based out of Alexandria, Virginia, it has satellite offices throughout

7 | the country. (*Id.* at 5 n.5.)  At its discretion, the PTO assigned Microsoft's IPRs to the

8 | Virginia office rather than one of its other offices. (*Id.*)

Judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (citing *Religious Tech. Ctr. v. Scott*, 869 F.2d 1306, 1311 (9th Cir. 1989)).  The doctrine "is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process." *Id.*  It "is most commonly applied to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding or a prior one." *Id.*  The court should consider the following three factors to determine if judicial estoppel should be applied in a given case:  (1) if a party's later position is "clearly inconsistent" with its earlier position; (2) if the party succeeded on its earlier position such that succeeding on its later inconsistent position would create the impression that one of the courts was misled; and (3) whether the party would achieve an unfair advantage if not estopped. *See Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983,

//

994 (9th Cir. 2012) (citing *New Hampshire v. Maine*, 539 U.S. 742, 750-51 (2001)). The court finds that none of these factors counsels in favor of judicial estoppel.

There is no inconsistency in Microsoft's positions. In seeking IPR, Microsoft did not claim that the Western District of Washington is not "the hub of infringing activity" or where "the bulk of the evidence likely relevant to this case is located," which is what Microsoft argued to the Virginia district court. (*See* 2/26/18 Order at 1-4.) Rather, Microsoft filed its IPR petitions—for validity, not infringement—the only way it could: with the PTO, which then assigned the petitions to Virginia at its discretion. *See* 37 C.F.R. § 42.6(b); (Reply at 5 n.5.) Consequently, neither the Virginia district court, nor the PTAB, nor this court, were misled by Microsoft filing IPR petitions with the PTO and thereafter seeking a stay. And while this matter is delayed by Microsoft's IPR petitions, the court does not find that Microsoft achieved an unfair advantage by inconsistent positions. Moreover, as discussed, the Plaintiffs will not suffer undue prejudice as a result of this delay. *See supra* § III.C. Thus, the court finds that Microsoft should not be judicially estopped from moving to stay this case.

## IV. CONCLUSION

Based on the foregoing analysis, the court GRANTS Microsoft's motion (Dkt. # 117), STAYS the case pending the PTO's decisions on Microsoft's 10 IPR petitions, VACATES all case deadlines that remain as of the date of this order, and ORDERS the parties to file a joint status report regarding the status of Microsoft's 10 IPR petitions

//

//

within seven (7) days of receiving decisions on all 10 petitions from the PTO or on May 1, 2019, whichever occurs first.

Dated this 20th day of November, 2018.

JAMES L. ROBART
United States District Court Judge